UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 06-00032 (HHK) |
| | : | |
| GEORGE MCKOY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's motion to suppress evidence. In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

**Factual Summary**

1. The defendant is charged in a two count indictment with the following crimes: Possession with Intent to Distribute 50 Grams or More of Cocaine Base, 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii) and Simple Possession of a Controlled Substance, Marijuana, 21 U.S.C. § 844(a).

2. At a hearing or trial in this matter, government counsel expects the evidence for these charges to demonstrate substantially as follows: On Tuesday, January 3, 2006 at approximately 11:56 pm, an officer from the United States Park Police (USPP) initiated a traffic stop for obstructing traffic on a 2003 Jaguar driven by the defendant at 35th and A Streets, SE, Washington, D.C., a public street and an area known to the Park Police for drug trafficking. The defendant was alone in the car at the time of the stop, and had stopped his vehicle in the travel

portion of the roadway adjacent to a parked vehicle. In addition to seeing the defendant's vehicle blocking the roadway, the officer further observed an individual exit a nearby house and enter the front passenger side of the car. This individual remained in the car for about thirty seconds, and then got out of the car.

3. Upon making contact with the driver, the officer noticed that he appeared extremely nervous. He became argumentative and broke eye contact as the officer spoke to him. His hands were trembling. The defendant was asked to step out of the vehicle, and as he complied, the defendant left his driver's side door open. Another Park Police officer was summoned as backup to the scene approximately six to eight minutes after the defendant's vehicle was stopped, and arrived on the scene soon thereafter, accompanied by a certified drug detection K-9. The K-9 officer performed a K-9 sniff around the exterior of the vehicle. He began the sniff process at the front bumper and proceeded in a counter-clockwise direction. While passing the open driver's side door of the car, the K-9, who was on a leash, jumped into the driver's seat of the car, but was immediately removed seconds later by the officer. The K-9 had not been directed to jump into the car, and the K-9 did not display any change in behavior nor alert to any narcotics odor at that time. The sniff continued, and while the officer and K-9 passed the left tail lamp, the dog began sniffing intensely, but then continued on. The sniff continued with the officer and the K-9 reaching the front bumper, at which time they turned around and headed back in a clockwise direction around the exterior of the car. Again, the K-9 showed some interest in the left tail lamp, but continued on. The officer continued to walk the K-9 around the car and brought him to the still open driver's side door a second time. This time, however, the K-9 alerted to the presence of a narcotics odor while still outside the vehicle. This

alert manifested itself in a head turn and intense, closed-mouth sniffing. The K-9 then jumped into the driver's seat of the car again, and this time began intensely sniffing the center armrest. The K-9 then jumped over into the passenger seat, touched his nose on the center armrest and sat, which was an indication of a final response for the presence of a narcotics odor.

4. Consistent with the K-9's alert and final response, a search of the center console yielded a clear sandwich bag containing three ziplock bags of crack cocaine, and an orange ziplock bag containing marijuana. A search of the trunk yielded a blue and black backpack containing a digital scale with residual cocaine, mail matter addressed to "George McKoy," and various photographs of the defendant, George McKoy. The backpack further contained a black plastic bag holding two clear bags, containing a total of approximately eighty-seven (87) grams of crack cocaine, and a black plastic bag holding one clear bag, containing a total of approximately sixty-two (62) grams of crack cocaine. Forensic analysis by the Drug Enforcement Administration ("DEA") confirmed the presence of cocaine base in the total amount of one hundred forty-four and sixty-nine hundredths (144.69) grams, and marijuana in the amount of seventy hundredths (.70) grams. The backpack further contained a razor blade with residual cocaine, and narcotics packaging supplies consisting of "red apple" label bags filled with approximately one hundred twenty-six (126) empty clear and yellow ziplock bags. The police also recovered two previously issued Notices of Infraction (NOI) for Mr. McKoy from the glove compartment and several items of mail from the driver's side sun visor. A search of Mr. McKoy's body yielded eight hundred and thirty-one ($831.00) dollars in U.S. currency, while the car yielded an additional one hundred ten ($110.00) dollars U.S. currency, for a total of nine hundred forty-one ($941.00) dollars in U.S. currency.

5. The next day, (about fourteen hours post-arrest) January 4, 2006, at approximately 2:37 pm, the police executed a D.C. Superior Court search warrant at the defendant's home, a single family house located at 4318 Bowen Road, SE, Washington, D.C., where they found four digital scales, numerous unused ziplock bags, plastic bags with white residue, and mail matter in the name of George McKoy.

## Argument

### A. The Traffic Stop was Lawful and Constitutionally Permissible

1. The defendant asserts that the stop of the defendant was objectively unreasonably because the police officer "had no reasonable basis for believing that defendant had committed a traffic offense or any other kind of offense." Defendant's Motion to Suppress Evidence at Page 2. Defendant's argument is meritless. Defendant ignores the fact that he was, in fact, committing a traffic offense at the time that he was first approached by the police officer. Obstructing the travel portion of the roadway, as the defendant was doing in the case at bar, provides probable cause for the police to initiate a traffic stop.[1]

2. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. Adams v. Williams, 407 U.S. 143, 145 (1972). Instead, it is well settled that a police officer may briefly detain a suspect if he has a reasonable articulable

---

[1] Even if this Court should somehow find that probable cause to initiate the traffic stop was not triggered at the moment the officer saw the defendant blocking the travel portion of the roadway at midnight in a high drug area, the officer certainly had reasonable, articulable suspicion that criminal activity was afoot, and was entitled to confirm or dispel his suspicion that something may be amiss by effectuating a traffic stop of the vehicle and making contact with the defendant.

suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1 (1968); United States v. Hensley, 469 U.S. 221, 227-29 (1985). "Under the Fourth Amendment ... a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975) (internal quotation marks omitted).

    3.    Reasonable suspicion is a "commonsensical proposition" that credits the officer's special training and practical experience, United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993), and it is a lesser showing than probable cause. United States v. Perrin, 45 F.3d 869, 872 (4th Cir. 1995), cert. denied 115 S.Ct. 2287 (1995). Even innocent factors considered together can amount to a reasonable suspicion. United States v. Sokolow, 490 U.S. 1, 9-10 (1989).

    4.    In the case at bar, the police officers witnessed firsthand a possible drug transaction at a very late hour of the evening, coupled with an overt traffic infraction. As a consequence, the officer conducted a lawful traffic stop. When officers properly stop a car, they may detain the car and its occupants to check the driver's license and registration, and may require the driver to exit the car. Pennsylvania v. Mimms, 434 U.S. 106 (1977). After a stop occurs and facts develop to give probable cause, the police may legitimately further detain the occupants. Id. Further, where the police have articulable suspicion to stop a car they may take reasonable measures to ensure their safety. United States v. Mitchell, 951 F.2d 1291 (D.C. Cir. 1991). See United States v. Sharpe, 470 U.S. 675, 628 n.3 (1985)(police observation of overloaded pickup truck with camper shell commonly used to transport illegal drugs and evading police provided reasonable suspicion to justify stop for suspected drug use).

5

## B. The Traffic Stop was Not Extended Impermissibly

5.	Defendant argues that his "stop was unreasonably prolonged." Defendant's Motion at Page 3. This argument, too, must fail. Where there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile is permissible under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 663 (1979). In United States v. Hutchinson, 408 F.3d 796 (D.C. Cir. 2005), it was held that the retention of a defendant's identification for the purpose of running a "WALES/NCIC" (Washington Area Law Enforcement System/National Crime Information Center) records check via computer, thereby prolonging the Terry investigative stop for an additional two to five minutes, did not violate the defendant's Fourth Amendment rights. Similarly, in the instant case, the fact that a brief period of time elapsed between the time of the traffic stop and the K-9 sniff, does not render the temporary detention invalid or unconstitutional. As the Supreme Court has held, there is "no rigid time limitation on Terry stops." United States v. Sharpe, 470 U.S. 675, 685 (1985).

6.	In Illinios v. Caballes, 543 U.S. 405 (2005), the Supreme Court held that where a lawful traffic stop was not extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to such a stop, another officer's arrival at the scene where the stop was in progress, and the use of a narcotics detection dog to sniff around the exterior of the motorist's vehicle did not rise to the level of a cognizable infringement on the motorist's Fourth Amendment rights, such as would have to be supported by some reasonable, articulable suspicion.

Other Circuits have held, both before and after <u>Caballes</u> was handed down, that reasonable delay times do not invalidate the detention:  See <u>United States v. Williams</u>, 429 F.3d 767 (8th Cir. 2005) (Traffic stop was not unreasonably prolonged where the wait for the drug sniffing dog was only five to six minutes); <u>United States v. Carpenter</u>, 406 F.3d 915 (7th Cir. 2005) (During lawful traffic stop, arrival of another officer at scene while stop was in progress and use of narcotics detection dog to sniff around exterior of motorist's vehicle did not rise to the level of a cognizable infringement on motorist's rights, such as would have to be supported by some reasonable, articulable suspicion, even if the stop was extended by at most five minutes beyond the time necessary to issue a ticket for evading a red light and to conduct normal inquiries incident to such a stop); <u>United States v. Gregory</u>, 302 F.3d 805 (8th Cir. 2002) (A dog sniff of a car following a traffic stop did not unreasonably extend the length of the detention where there is no evidence that the dog sniff itself was unduly lengthy, and just over twenty minutes elapsed from the beginning of the stop to the completion of the dog sniff); <u>United States v. Lebrun</u>, 261 F.3d 731 (8th Cir. 2001) (Twenty minute detention, based upon reasonable suspicion, following traffic stop while officer awaited arrival of drug dog was not excessive); <u>United States v. Massie</u>, 65 F.3d 843 (5th Cir. 1995) (Detention of vehicle where questioning lasted eight to eleven minutes from time of stop at primary, to the moment the dog alerted to the vehicle at secondary, was reasonable); <u>United States v. Jeffus</u>, 22 F.3d 554 (4th Cir. 1994) (The fifteen minute period prior to the K-9 sniff during the traffic stop was reasonable); <u>United States v. Bloomfield</u>, 40 F.3d 910 (8th Cir. 1994) (The one hour time period between when the officer pulled the defendant over for a traffic violation and when officer arrested defendant was not unreasonable period to wait for drug dog to verify officer's suspicion that vehicle contained drugs); <u>United States v. White</u>, 42 F.3d 457 (8th

Cir. 1994) (The detention of one hour and twenty minutes to wait for a drug dog was reasonable where the officer acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog); United States v. Hardy, 855 F.2d 753 (11th Cir. 1988) (Trooper acted with dispatch in obtaining trained dog and fifty minute delay did not invalidate the detention, particularly due to the trooper's avoiding any questioning of the defendant during the waiting period). Thus, it is clear that the defendant's rights here were not infringed by virtue of the brief extension of time necessary to perform the expeditious dog sniff.

      7.     Once the K-9 alerted to the odor of drugs from outside the vehicle, probable cause attached to search the center console. United States v. Martin, 422 F.3d 597 (7th Cir. 2005); United States v. Williams, 403 F.3d 1203 (10th Cir. 2005); United States v. Hill, 386 F.3d 855 (8th Cir. 2004); United States v. Moore, 329 F.3d 399 (5th Cir. 2003); United States v. Carter, 300 F.3d 415 (4th Cir. 2002); United States v. Garcia, 205 F.3d 1182 (9th Cir. 2000); United States v. Owens, 167 F.3d 739 (1st Cir. 1999); United States v. Anchondo, 156 F.3d 1043 (10th Cir. 1998); United States v. Seals, 987 F.2d 1102 (5th Cir. 1993); United States v. Colyer, 878 F.2d 469 (D.C. Cir. 1989). "Probable cause means that there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

### C. A Drug Detection Dog Sniff of an Automobile is Not A Search

      8.     "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." United States v. Jacobsen, 466 U.S. 109, 123 (1984) cited in Illinois v. Caballes, 543 U.S. 405 (2005). "A dog sniff conducted during a [] lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Caballes, 543 U.S.

at 410.  In <u>United States v. Place</u>, 462 U.S. 696 (1983), the Supreme Court "treated a canine sniff by a well-trained narcotics-detection dog as '<u>sui generis</u>' because it 'discloses only the presence or absence of narcotics, a contraband item." <u>Place</u>, 462 U.S. at 707.  "Accordingly, the use of a well-trained narcotics-detection dog–one that 'does not expose noncontraband items that otherwise would remain hidden from public view...during a lawful traffic stop, generally does not implicate legitimate privacy interests." <u>Caballes</u>, 543 U.S. at 409, internal citation omitted.  Just as in <u>Caballes</u>, the pertinent dog sniff in the instant case, the one which yielded criminal fruits, was performed on the exterior of defendant's car while he was lawfully seized for a traffic violation. "Any intrusion on [defendant's] privacy expectations does not rise to the level of a constitutionally cognizable infringement." <u>Caballes</u>, 543 U.S. at 409.

**D.  The K-9's First Entrance into the Car Yielded No Contraband Subject to Suppression**

9.     Defendant asserts that the first dog sniff upon the K-9's "initial invasion of defendant's vehicle" itself infringed upon defendant's constitutionally protected privacy interest. Defendant's Motion at Page 5.  This argument must fail for several reasons.  First, no criminal fruit subject to suppression was identified, seized, or recovered during the K-9's initial, seconds long entry into the car.  The dog did not alert to contraband at all during that first vehicle entry, and accordingly, no police action was taken in reliance on anything the canine did or didn't do during that first, brief entry into the car.  Second, the dog handling officer neither directed nor encouraged the dog to make that initial entry, and once he realized that the dog had errantly jumped into the car, he quickly pulled the dog out of the car.  Third, and perhaps most important, the case of <u>United States v. Stone</u>, 866 F.2d 359 (10th Cir. 1989), a case factually on all fours as

the instant case, commands the result that the dog's first entry into the vehicle did not violate the Fourth Amendment. An in-depth discussion of <u>Stone</u>, 866 F.2d at 359, is instructive and follows.

     10.   In <u>United States v. Stone</u>, 866 F.2d 359 (10th Cir. 1989), the defendant was stopped by the police for speeding, at which time he denied that he was speeding, and informed the officer that he had been stopped earlier by the police. The officer asked to see the prior ticket, and in response, the defendant got out of the car, opened the rear hatchback and retrieved the ticket. A few minutes later, another police officer arrived with a narcotics detection dog. The dog circled the car, showed interest underneath the rear area of the car and at the passenger door, and then jumped in the open hatchback, where he alerted on a duffel bag. The police then searched the entire car and duffel bag, finding approximately 33,000 methaqualone tablets. Mr. Stone was indicted for possession with intent to distribute methaqualone and filed a pretrial motion to suppress the narcotics, alleging that both the stop of his car and the subsequent search violated the Fourth Amendment. The defendant asserted that he opened the trunk of his car because the officer insisted on seeing the citation he had received earlier. <u>Stone</u>, 866 F.2d at 361.

     11.   The trial court in Stone found <u>"that the dog's leap into the back of the car did not vitiate the seizure, regardless of whether or not it was a search. The judge found that the defendant voluntarily opened the hatchback to retrieve the citation requested by [the] Officer []. Then the dog came along and 'on his own, apparently jumped into the back of this car and immediately found what is sought to be suppressed here.' The judge found that in these circumstances the search and seizure did not violate the Fourth Amendment."</u> <u>Stone</u>, 866 F.2d at 362 (emphasis added).

      12.    The Tenth Circuit Court of Appeals acknowledged that "the dog created a troubling issue under the Fourth Amendment when it entered the hatchback," but ultimately affirmed the lower court's decision, and went on to find that "the dog's instinctive actions did not violate the Fourth Amendment. There is no evidence, nor does [the defendant] contend, that the police <u>asked</u> [the defendant] to open the hatchback so the dog could jump in. Nor is there any evidence that the police handler <u>encouraged</u> the dog to jump in the car." <u>Stone</u>, 866 F.2d at 363-64 (emphasis added).

      13.    The same is true in the case at bar. The dog's instinctive actions when he first jumped in the car did not violate the Fourth Amendment. As indicated earlier, no contraband subject to suppression was found during this first entry, and the dog did not alert or change his behavior in any way during this first entry. Like the officer in <u>Stone</u>, there is no indication here that the officer asked the defendant to leave open his car door, and the officer did not encourage the dog to jump in the car. Moreover, when the dog did so, the officer acted immediately and professionally to remove him. No Fourth Amendment violation occurred, therefore, as no constitutionally protected privacy interest was impinged upon by the canine's initial entry into the car.

### E.  The Contraband was Discovered via an Independent Source from the K-9's Initial Entry

      14.    Even if this Court should somehow find that the K-9's first entry into the defendant's car was illegal, the evidence seized in this case should not be suppressed inasmuch as it was discovered through a source independent of that proffered illegality. It was the K-9's alert to the narcotics while initially outside of the vehicle during the <u>second</u> exterior sweep, and confirmed by his final response during his <u>second</u> entry into the vehicle, which provided the

probable cause to believe narcotics were in the center console of the car. This source of probable cause is wholly independent of the first canine entry into the car, where nothing was smelled, nothing was alerted to, and nothing was seen nor recovered. The independent source doctrine reflects the idea that although the government ought not profit from its alleged misconduct, it also should not be made worse off than it would have been had the alleged misconduct not occurred in the first place. See United States v. Moore, 329 F.3d 399, 404-05 (5th Cir. 2003) (drug evidence obtained during allegedly illegal arrest admissible because discovery resulted from independent, legal canine sniff test of vehicle); United States v. Burton, 288 F.3d 91, 100-01 (3rd Cir. 2002) (suppression of evidence not warranted because police had independent probable cause to search vehicle, irrespective of alleged unlawful arrest); United States v. Veillette, 778 F.2d 899, 903-04 (1st Cir. 1985) (evidence admissible because search warrant application contained sufficient independent evidence to support probable cause); See generally Murray v. United States, 487 U.S. 533 (1988); Nix v. Williams, 467 U.S. 431 (1984). Thus, any proffered illegality to the canine's first entry into the car is of no moment, as all of the contraband was discovered only as a result of the independent, second external sniff of the vehicle and the attendant alert to narcotics odor as a consequence of that second external sniff.

WHEREFORE, for all of the reasons stated above, the United States respectfully submits that the defendant's motion to suppress evidence should be denied.

                              Respectfully submitted,

                              KENNETH L. WAINSTEIN
                              UNITED STATES ATTORNEY
                              BAR NO.  451058

                              _____
                              ROBERT J. FEITEL
                              ASSISTANT UNITED STATES ATTORNEY
                              D.C. BAR NO. 433-180
                              FEDERAL MAJOR CRIMES SECTION
                              202.353.3706

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing United States' Opposition to Defendant's Motion to Suppress Evidence is to be served upon counsel for the defendant, Assistant Federal Public Defender Jonathan Jeffress, this 12th day of April 2006.

                                                  ROBERT J. FEITEL
                                                  ASSISTANT UNITED STATES ATTORNEY