UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 06-032 (HHK) |
| GEORGE MCKOY, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT GEORGE MCKOY'S REVISED MOTION TO
COMPEL DISCOVERY AND MOTION TO CONTINUE
HEARING ON DEFENDANT'S MOTION TO SUPPRESS**

Mr. George McKoy, the defendant, through undersigned counsel, respectfully moves this Honorable Court to compel the government to provide him with additional discovery essential to the Court's resolution of defendant's Motion to Suppress Evidence Taken in Violation of the United States' Constitution ("Motion"). Specifically, the government should be ordered to produce all materials in its possession, custody or control relating to K-9 Finnegan's training records, its maintenance records, any records indicating ratio of alerts to seizures of drugs, and its veterinary records.

## BACKGROUND

This case arises out of events allegedly occurring on January 3, 2006 in the area of 35th and A Streets, S.E., Washington, D.C. United States Park Police Officer James Omo allegedly saw defendant double parked outside a home located at 316 34th Street, S.E. According to Officer Omo, during that time another individual came from 316 34th Street and met with defendant for about 30 seconds. Once defendant was on his way, Officer Omo followed him for several blocks before pulling him over at 35th and A Streets for "obstructing traffic."

At some point during the traffic stop, but in the absence of any reasonable suspicion of criminal activity, Officer Omo called for a "CDS detection canine" to conduct a "dog sniff" of defendant's vehicle. The K-9 and its supervising officer arrived sometime thereafter. During the search–but prior to the drug dog alerting for the presence of narcotics–the drug dog climbed onto the seat and into the interior compartment of defendant's vehicle. The dog was then removed from the vehicle and continued to circle the exterior of the car. When the dog reached the open driver's door for a second time, the dog finally alerted to the presence of narcotics in the vehicle. Based on that alert, the officers searched the vehicle and its trunk and allegedly recovered approximately 144 grams of crack cocaine and a small amount of marijuana. The officers also allegedly seized $941 from defendant's person as part of a search incident to arrest.

On April 3, 2006, defendant filed his Motion to Suppress. The Motion argues that the evidence in this case should be suppressed on a number of grounds: (1) because the traffic stop of defendant was objectively unreasonable; (2) because the officers unconstitutionally prolonged the traffic stop; (3) because the officers exceeded their constitutional authority in allowing the dog into defendant's car absent reasonable suspicion or probable cause. In addition, it is of course the government's burden in any case to justify a warrantless search of an individual's car. See, e.g., United States v. Matlock, 415 U.S. 164, 177 n.14 (1974). Thus, the government must show that the K-9 alert in this case was sufficiently *reliable* to support probable cause that there were narcotics in defendant's automobile.

Accordingly, defendant requested several discovery items from the government regarding the K-9 used in this case, K-9 Finnegan. Defendant requested, inter alia, the dog's training records, its training log, its veterinarian records, and a log of the times the dog has alerted versus

times narcotics have been discovered.  Based on conversations with defendant's expert, Dr. Lawrence Myers, the United States Park Police should either possess all of the foregoing materials or have easy access to them.  See Ex. 1 (Declaration of Dr. Myers).

On June 16, 2005, the government turned over only documents certifying that the dog and its handler were certified on January 3, 2006.  With regard to all additional requests, the government stated that the requests are for documents that "are either not in the existence in the format contemplated by the request, seek information immaterial to this case, or internal government documents not subject to disclosure."

Defendant's expert, Dr. Myers, has submitted a Declaration to the Court that the materials requested by defendant are essential to any resolution of the Fourth Amendment issues raised by Park Police's search of defendant's car in this case.[1]  Defendant is accordingly requesting that the Court enter the attached order compelling the government to locate and produce records that are in the possession, custody or control of the government regarding the dog's training, its training log, its veterinarian records, and a log of the times the dog has alerted versus times narcotics have been discovered.  Based on conversations with defendant's expert, undersigned counsel understands that Park Police should have the aforementioned records or have access to them.

---

[1] Defendant has previously submitted Dr. Myers *Curriculum Vitae*.

**DISCUSSION**

Consistent with the core principles of Brady v. Maryland, 373 U.S. 83 (1963), as well as Rule 16 of the Federal Rules of Criminal Procedure, the government must produce discovery related to the reliability of the K-9 in this case, K-9 Finnegan.

Under Rule 16, the government must disclose, inter alia, any documents or objects that are material to preparing defendant's defense. See Fed. R. Crim. P. 16(a)(1)(E). The government is also required to disclose the results of any scientific test or experiment if the results of any scientific test or experiment if the results are within its possession, custody or control, and if the attorney for the government knows or could know through due diligence that they exist, and the results are material to preparing the defense. See Fed. R. Crim. P. 16(a)(1)(F). The materials requested by defendant with respect to K-9 Finnegan all fall within one or both of the above sections of Rule 16.

In a decision directly on point, the Ninth Circuit held that the district court erred in denying the defendant general discovery concerning the drug-detection K-9 employed in that case. See United States v. Cedano-Arellano, 332 F.3d 568 (9th Cir. 2003). In Cedano-Arellano, just as in the present case, the search at issue was the search of a vehicle stemming from an alert by a narcotics detector dog. The defendant explained to the court that he had retained an expert to review the dog's training records, and sought discovery of a broad range of materials pertaining to the dog, including "his handler's log, all training records and score sheets, certification records, and training standards and manuals." Id. at 570. On appeal, the defendant argued that the materials at issue were crucial to his ability to assess the dog's reliability, a very

important issue in his defense, and to conduct an effective examination of the dog's handler. The Ninth Circuit agreed, and held that it was error for the district judge to deny the defendant the requested materials. See id. at 574 ("The documents sought pertaining to the dog's qualifications were material to the defense. They should have been disclosed to the defendant.").

The single case cited by the government, United States v. Sundby, 186 F.3d 873 (8th Cir. 1999), occurred under very different circumstances and is easily distinguished from the present case and Cedano-Arellano. In Sundby, the search was not of a car, but of a package sent through the United States Postal Service. The police had already received a tip that the package was carrying narcotics, and brought in a narcotics detection dog to verify and further substantiate the information. Once the narcotics dog alerted to the package, the police used that information to obtain a search warrant. A magistrate judge issued the warrant, thereby automatically changing the standard of review: "We give great deference to the issuing magistrate judge's decision and consider only whether the judge had a substantial basis for finding probable cause." Id. at 875. The defendant never filed a motion to compel; rather, he was attacking the validity of the warrant after the fact for not including more information about the dog's training, handling, and error rates. The court held only that the police's failure to provide such information in the search warrant affidavit did not invalidate the search warrant. Thus, the Sundby court was obviously operating under a significantly different set of circumstances than this Court and the court in Cedano-Arellano.

Finally, Dr. Myers, an expert trained in the area of animal behavior and detection dog training, see Myers C.V., has submitted a Declaration stating that the limited information offered by the government thus far "does not provide the information required to offer an analysis of the

5

reliability and appropriateness of use of this dog handler team." Myers Decl. (Ex. 1), ¶ 2. Dr. Myers further submitted that in order to effectively evaluate the reliability of the K-9 Finnegan, the government must produce the records requested in this motion. See id. ¶ 3.

## CONCLUSION

For the foregoing reasons, defendant respectfully moves this Honorable Court to compel the government to produce the above-referenced materials, or to state that such materials do not exist. Specifically, the government should be ordered to produce all materials in its possession, custody or control relating to K-9 Finnegan's training records, its maintenance records, any records indicating ratio of alerts to seizures of drugs, and veterinary records.

Respectfully submitted,

_____
Jonathan S. Jeffress
Assistant Federal Public Defender
Counsel for George McKoy
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20001
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 06-032 (HHK) |
| | ) | |
| GEORGE MCKOY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of defendant's motion to compel discovery, any opposition thereto, and finding good cause shown, it is hereby:

**ORDERED** that the government shall search for the following records and disclose any such records found to defense counsel: records regarding K-9 Finnegan's training, its maintenance, any records indicating its ratio of alerts to seizures of drugs, and its veterinary records.

_____
The Honorable Henry H. Kennedy

**DATE:**

Copies to:
    Jonathan Jeffress, AFPD
    Michael Truscott, AUSA