UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    : | |
| : | |
| v.                           : | Criminal No. 06-00032 (HHK) |
| : | |
| GEORGE MCKOY,                : | Motions Hearing: August 3, 2006 |
| : | |
| Defendant.                   : | |

UNITED STATES' OPPOSITION TO DEFENDANT'S
REVISED MOTION TO COMPEL DISCOVERY

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its opposition to Defendant George McKoy's Revised Motion to Compel Discovery and Motion to Continue Hearing on Defendant's Motion to Suppress (Motion to Compel) filed on or about July 6, 2006.  In support of its opposition, the United States would show the following:

FACTUAL SUMMARY

1. The defendant is charged in a two count indictment with: Possession with Intent to Distribute 50 Grams of More of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii) and Simple Possession of a Controlled Substance, Marijuana, in violation of 21 U.S.C. § 844(a).

2. On January 3, 2006 Officer Jason Omo from the United States Park Police (USPP) observed the defendant's vehicle, a 2003 Jaguar, parked in a travel lane in the vicinity of 35th and A Streets, SE, Washington D.C., an area known to the USPP for drug trafficking.  The defendant, sitting in the driver's seat, was the sole occupant of the vehicle at this time.  However, Officer Omo soon observed another individual exit a nearby building and enter the vehicle on the front passenger

side. The second individual remained in the car for about thirty seconds before getting out and returned to the building. Soon thereafter, Officer Omo initiated a traffic stop on the 2003 Jaguar for obstructing traffic. During the course of the traffic stop, Officer Omo noticed that the defendant's hands were trembling and that he appeared to be extremely nervous. The defendant also became argumentative and broke eye contact when Officer Omo spoke to him. When Officer Omo asked defendant to step out of the vehicle, the defendant got out of the car and left the door open.

      3. Officer Omo requested assistance from a USPP K-9 unit. Officer Jeff Daugherty and K-9 Finnegan arrived on the scene and performed a dog sniff around the exterior of the vehicle. K-9 Finnegan ultimately alerted to the presence of a narcotics odor outside the open drivers' side door. After intensely sniffing the center console, K-9 Finnegan jumped into the passenger seat, touched his nose on the center console, and sat, which was an indication of a final response for the presence of a narcotics odor.

      4. A search of the center console yielded a clear sandwich bag containing three Ziplock bags of crack cocaine and an orange Ziplock bag containing marijuana. A search of the trunk yielded a blue and black backpack containing a digital scale and razor blade, both with residual cocaine, "red apple" label bags with approximately one hundred twenty-six (126) empty clear and yellow Ziploc bags, mail matter addressed to George McKoy, and various photographs of the defendant. The backpack also contained two black, plastic bags which contained clear bags of crack cocaine. One of the black bags concealed a total of eighty-seven (87) grams of crack; the other concealed approximately sixty-two (62) grams of crack.[1] In addition, the police recovered two previously issued Notices of Infraction (NOI) for Mr. McKoy from the glove compartment and several items

---

[1] Forensic analysis by the Drug Enforcement Agency ("DEA") confirmed the presence of .70) grams of marijuana and 144.69 grams of cocaine base.

of mail from the driver's side sun visor. A search of Mr. McKoy's person yielded $831 in U.S. currency, while the car yielded an additional $110, for a total of $941 in U.S. currency.

5. The Defendant George McKoy's Motion to Suppress Evidence Seized In Violation of the United States Constitution (Motion to Suppress) was filed on April 3, 2006. The United States' Opposition to Defendant's Motion to Suppress Evidence was filed on April 12, 2006. Shortly before the hearing on the Motion to Suppress, the defendant filed a motion to compel discovery, and for a continuance, seeking an order compelling the United States to produce documents related to K-9 Finnegan's training, track record, and veterinarian records . On June 26, 2006, the Court denied the defendant's discovery motion without prejudice. The Court granted the defendant leave to file another motion, with citations to proper authority, seeking this discovery. Accordingly, the instant Motion to Compel was filed. However, the Motion to Compel fails to demonstrate, under the case law, that the requested discovery seeks material documents and, thus, is warranted. Therefore, the Motion to Compel should be denied

## ARGUMENT

THE MOTION SHOULD BE DENIED SINCE THE DOCUMENTS SOUGHT ARE IMMATERIAL AND THE UNITED STATES HAS ALREADY PROVIDED DOCUMENTATION DEMONSTRATING K-9 FINNEGAN'S RELIABILITY

6. The defendant seeks to compel production of "all materials in its possession" relating to K-9 Finnegan's training records, maintenance records, records indicating ratio of alerts to seizures of drugs, and veterinary records. See Motion to Compel, p. 1. The United States has already provided the defendant with documents memorializing that K-9 Finnegan and his handler were appropriately trained and certified on January 3, 2006. See Motion to Compel, p. 3. It is the United

States' position that, according to the weight of the case law, these records constitute the entirety of materials necessary to establish a drug dog's reliability. Anything beyond what has already been disclosed regarding K-9 Finnegan's history would be both immaterial and overbroad with respect to time and relevance. The defendant's request should be denied accordingly.

7. The defendant argues that the drug dog's training, maintenance and veterinary records are essential to his defense and must be disclosed pursuant to Rule 16 of the Federal Rules of Criminal Procedure. However, Rule 16 compels disclosure only of those documents and reports which are "material to preparing the defense." Fed.R.Crim.P. 16(a)(1)(E)(i). In this context, materiality requires more than tangential relevance to the issues in the case; the government need only disclose evidence which, "in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." United States v. Jordan, 316 F.3d 1215 (11th Cir. 2003) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)). In this case, the defendant has not established that the requested records are material to the outcome of his case. The Declaration of Dr. Lawrence J. Myers, submitted along with the Motion to Compel, completely fails to explain how Finnegan's initial training records and veterinary records will elucidate on Finnegan's reliability in January of 2006. Moreover, Dr. Myers putative opinion on the "appropriateness of use of this dog-handler team" is completely immaterial to the Motion to Suppress and will serve only to immerse the Court in collateral litigation. In light of the expansiveness of the defendant's request and the fact that disclosure of the drug dog's training and veterinary records is unlikely to have any bearing on the determination of probable cause or the outcome of the trial, the defendant's motion to compel should be denied.

8. Further, the case law does not support the defendant's extremely broad request. Indeed, the defendant argues that the government must provide documentation detailing every aspect of K-9

4

Finnegan's history to establish that Officer Omo's reliance on K-9 Finnegan was reasonable.[2] Most courts do not condition a finding of reliability on detailed analysis of a drug dog's records, but instead accept that a certified police dog is reliable by virtue of the fact that it has (1) undergone the requisite training required by law enforcement agencies and (2) been approved for drug detection detail. See United States v. Nava, 363 F.3d 942, 944 (9th Cir. 2004)(United States only required to turn over dog's training and certification records and nothing more); United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999)(government need only establish that the dog has been trained and certified to detect drugs; need not give a detailed account of track record or education); United States v. Outlaw, 134 F.Supp.2d 807, 810-12 (W.D.Tex. 2001) (a Daubert hearing is not the proper procedure for challenging reliability of canine inspection; government need only prove that canine unit was trained and certified); State v. Nguyen, 811 N.E.2d 1180, 1187-92 (Ohio App. 2004)(requested production of police dog's reports denied as immaterial). Courts in this circuit subscribe to this standard as well, holding that testimony by the police handler will support the reliability of the dog's alert notwithstanding further documentary proof. See United States v. Trayer, 898 F.2d 805, 809 (D.C. Cir. 1990)(dog alert found reliable when handler testified the dog alerted correctly in 58 out of 60 alerts).[3]  Here, the United States has already provided the defense with a

---

[2]  It is well-established that an alert by a drug-sniffing dog provides sufficient probable cause to conduct a search of a suspect's vehicle as long as the dog is reliable.  See United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999); United States v. Diaz, 25 F.3d 392 (6th Cir. 1994).

[3] Even those courts which allow further discovery of a K-9's past seem to be forgiving of a less-than-perfect record.  In United States v. Owens, 167 F.3d 739 (1st Cir. 1999), the court found the drug dog's alert was reliable despite the fact that the dog had a poor performance record and had failed his certification test twice before passing.  Cases like Owens suggest that a K-9's past record is immaterial when weighed against both objective evidence of accuracy in the case at bar and testimony that a dog is considered reliable by his handler.

copy of K-9 Finnegan's certification, thereby satisfying the requisite documentation of reliability. Any other records pertaining to K-9 Finnegan are, therefore, immaterial.

9. The Motion to Compel fails to cite a single case from this circuit requiring this type of discovery. Furthermore, the defendant's reliance on <u>Cedano-Arellano</u> to justify unlimited discovery of K-9 Finnegan's records is misplaced. <u>See</u> Motion to Compel, pp. 4-5. First, subsequent Ninth Circuit cases have held discoverable only a dog's training and certification records, not its veterinary records. <u>See</u> <u>United States v. Nava</u>, 363 F.3d 942, 944 (9th Cir. 2004)(finding disclosure of a dog's certification was sufficient post-<u>Cedano-Arrellano</u>). It also appears that the defendant in <u>Cedano-Arrellano</u> was not provided with any documents memorializing that the dog was certified. Here, in contrast, the defendant has been provided with Finnegan's certification and resume. Similarly, in <u>United States v. Lambert</u>, the court denied defendant's request for unlimited discovery regarding the drug dog's past record. 351 F.Supp.2d 1154 (D.Kan. 2004). The court found relevant to probable cause only the dog's training and certification records for the year prior to the date of search; all other records were rendered immaterial to the defendant's case. <u>Id.</u> at 1162. Here, the defendant's request is completely unlimited as to time frame. Even if the United States had the records from when Finnegan was a pup, they are completely immaterial to the issues here. Indeed, the defendant has wholly failed to offer any basis for the production of K-9 Finnegan's veterinary records. Contrary to the Court's ruling on June 26th, the defendant has failed to offer any authority for the proposition that he is entitled to Finnegan's veterinary records. Therefore, the defendant's unlimited discovery demand is over-broad and should be denied.

10. The Motion to Compel also seeks "times alerted versus narcotics discovered" and "the times not alerted versus narcotics discovered." <u>See</u> Letter of Michael T. Truscott, dated June 16,

6

2006, a copy of which is attached hereto as Exhibit 1.  Apparently, the Motion to Compel now seeks to characterize this request as "any records indicating ratio of alerts to seizure of drugs."  Aside from the issue of whether this request requires the United States to review all of its records to create such a document,[4] a process clearly not contemplated by the Federal Criminal Rules of Procedure, this request is overbroad and vague.  For example, this request would appear to require the United States to produce police reports where Finnegan did not alert, and may or may not have been provided with an opportunity to perform a sniff in the area where the drugs were recovered.  Also, the Motion to Compel fails to explain how a failure by Finnegan to alert when drugs were present is somehow relevant to when he does alert and drugs are present.  In sum, the Motion to Compel seeks to have this Court engage in a large amount of collateral litigation regarding the circumstances under which Finnegan has both alerted and not alerted in the past.

**WHEREFORE** the United States respectfully submits that defendant's Motion to Compel Discovery should be denied.

                                            Respectfully submitted,

                                            KENNETH L. WAINSTEIN
                                            UNITED STATES ATTORNEY

BY: _____
       MICHAEL T. TRUSCOTT
       Assistant United States Attorney

---

[4] The Motion to Compel states on page 3 that Dr. Myers "should either possess all of the foregoing materials or have easy access to them" and then goes on to cite to Dr. Myers' declaration.  The declaration provided to the United States as part of this motion includes no such statement.  Moreover, to the extent that it is based upon other conversation with Dr. Myers, it wholly fails to explain the basis for this statement.  Therefore, the motion should be denied.