UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 06-032 (HHK) |
| GEORGE MCKOY, | ) ) | <u>Oral Argument Requested</u> |
| Defendant. | ) ) ) | |

**DEFENDANT GEORGE MCKOY'S MOTION FOR RECONSIDERATION
OF COURT'S RULING ON DEFENDANT'S MOTION TO SUPPRESS**

On March 19, 2007, the Court held a hearing at which it denied defendant's Motion to Suppress Physical Evidence. At the hearing and in a subsequent Memorandum Opinion, the Court denied defendant's Motion on three bases, <u>to</u> <u>wit</u>: (1) that Officer Omo had probable cause to believe a traffic offense had been committed; (2) that Officer Omo had reasonable suspicion of criminal activity such that he could detain defendant until a drug-sniffing dog arrived on the scene; and (3) that the dog's repeated entries into Mr. McKoy's vehicle were constitutionally permitted. <u>See</u> March 22, 2007 Memorandum Opinion ("Mem. Op.") at 5-6.

Defendant does not by this Motion move to reconsider the Court's rulings with respect to the first two issues. With respect to the third issue, however, defendant respectfully moves to reconsider the Court's ruling. With the utmost respect, defendant submits that the Court's analysis of the third issue was both factually and legally incorrect. There is simply no exception to the warrant requirement that could possibly excuse Finnegan's warrantless search of the interior of defendant's vehicle. Under the Fourth Amendment and all applicable precedent, Finnegan's second entry into the vehicle (at a minimum) was plainly unconstitutional. The Court

should accordingly reconsider its ruling on this issue and suppress the physical evidence.

## DISCUSSION

Respectfully, the Court's ruling with respect to Finnegan's entry into defendant's vehicle was both factually and legally incorrect. As an initial matter, the Court's ruling failed to recognize the significance of three crucial facts. First, it is of significant importance in this case that Finnegan was *on a leash* controlled by his law enforcement handler, Officer Jeffrey Daughtery, for the entire duration of the search. See AT at 39 (dog on leash); id. at 39-40 (leash gave Officer Daughtery control over dog); id. at 47-48 (leash is six feet long, but Officer Daughtery chokes up on the leash by a couple of feet to "keep it short"); Mem. Op. at 4 ("With Finnegan on a leash..."). A dog's actions cannot be deemed "instinctual" where a police officer has control over where the dog searches, as Officer Daughtery plainly did in this case. See id. at 39 ("Q . . . the dog was on a leash? A: Yes. Q: . . . And that gives you control over the dog? A: Yes.").

Second, the Court failed to recognize the significance of the fact that the open door which Finnegan jumped through was open only because the Park Police Officers *ordered defendant to exit the vehicle*. Id. at 45. The door being open and remaining open was therefore a direct result of conduct by the Park Police Officers.

And finally, the Court's ruling failed to recognize that the Park Police Officers allowed the door to remain open even after Finnegan improperly jumped into defendant's vehicle on the first occasion. Following the first illegal entry, there was no effort by the Park Police officers whatsoever to prevent Finnegan from illegally entering defendant's car a second time. Indeed, the record is barren of any efforts made by the officers to prevent Finnegan from entering

2

defendant's car on either occasion. Given these three circumstances–(1) that Finnegan was on a leash and controlled by his law enforcement handler, (2) that the car door was only open as a result of police conduct, and (3) that the officers allowed Finnegan to enter the car illegally not once but twice–it cannot be seriously contended that Finnegan's entry into the car was "instinctual." Mem. Op. at 16.

When the above three circumstances are taken into account, the legal error behind the Court's ruling on this issue is evident. There is simply no applicable exception to the warrant requirement that permitted Finnegan to enter defendant's vehicle. The only conceivable basis advocated by the government, which is not an exception but an excuse--that the dog's actions were "instinctual" and that Finnegan entered the car against the wishes of the officers--is wholly implausible on this record. Finnegan's instincts cannot be used to justify the warrantless search of defendant's car where: (1) *Finnegan was on a leash*; (2) the car door was *ordered* opened by the Park Police Officers; and (3) Finnegan had already improperly jumped in the car once, giving fair warning to the officers that this could happen again.

The fact that the Court found that the officers had "reasonable suspicion" of criminal activity sufficient to detain and question defendant, Mem. Op. at 12-13, in no way affects the analysis of Finnegan's entry into defendant's vehicle. It is undisputed that a police search of the interior of a citizen's vehicle--either by a dog or a human being--requires not just reasonable suspicion, but probable cause. See United States v. Allen, 629 F.2d 51, 55 (D.C. Cir. 1980). See also Katz v. United States, 389 U.S. 347 (1967); Henry v. United States, 361 U.S. 98 (1958); United States v. Jenkins, 530 F. Supp. 8, 10 (D.D.C. 1981) (citing Brinegar v. United States, 338 U.S. 160, 175 (1949)).

The seminal cases in the area of drug detection dogs authorize, in the absence of probable cause, an *exterior search only* of a citizens's vehicle.  See Illinois v. Caballes, 543 U.S. 405 (2006) (authorizing a warrantless inspection of "*the exterior* of respondent's car while he was lawfully seized for a traffic violation"); Indianapolis v. Edmond, 531 U.S. 32, 40 (2000) (finding that "walk[ing] a narcotics-detection drug dog around the *exterior*" of a car was not a search) (emphasis added).  None of the Court's factual findings in this case could possibly be used to change the permissibility of the search from one limited to the exterior of the car to one that encompasses the entire vehicle.

The case cited by the government and relied upon by the Court as analogous to this case, United States v. Stone, 866 F.2d 359 (10th Cir. 1989), does not remotely justify Finnegan's warrantless search of defendant's vehicle here.  In Stone, the defendant was pulled over for speeding, and the defendant informed the police that he had just been pulled over for speeding earlier.  The police officer asked to see the ticket, and the defendant–*on his own initiative and without being ordered by the police*–stepped out of the car and opened the hatchback of the car to retrieve the ticket.  Id. at 361.  After he opened the hatchback, the defendant left it open.  When the drug-sniffing dog arrived on the scene, *it was taken off of the leash*.  It then jumped into the hatchback as part of its search and alerted for the presence of narcotics, which were subsequently recovered.  Id.  The Stone court stated that "the dog created a troubling issue under the Fourth Amendment when it entered the hatchback." Id. at 363.  The court upheld the denial of defendant's suppression motion, however, as "there [was] no evidence that the police asked Stone to open the hatchback so the dog could jump in."  Id.

Here, in contrast to Stone, *the officers not only ordered defendant to open the door and*

*exit the vehicle, but also left the door open even after Finnegan had already illegally entered defendant's car on the first occasion*.  The officers were therefore fully aware that the circumstances were such that Finnegan could–and, indeed, likely would--illegally enter the car yet again.  Furthermore, throughout the entire search, Finnegan was on a leash.  Under the government's argument, and the Court's ruling, the officers were allowed--indeed, encouraged--to stick their heads in the sand and ignore the obvious risk that was posed by the open door, which was itself a circumstance of their own creation.  Indeed, if Finnegan's search is permitted here, what is to stop law enforcement from doing the same thing during every traffic stop?  There is nothing in the Court's Memorandum Opinion to stop officers from simply letting drug-detention dogs roam the interior of any citizen's vehicle during a traffic stop, so long as they do not directly "facilitate" the dog's search by overtly encouraging the dog to enter the car.  Such a result is directly contrary to the Supreme Court's ruling in <u>Caballes</u>, 543 U.S. 405, and should not be sanctioned by this Court.

     Here, as in <u>United States v. Winningham</u>, 140 F.3d 1328 (10th Cir. 1998), the police plainly created the opportunity for Finnegan to enter defendant's car by ordering defendant from the car and not closing the door.  Even worse, the officers extended and magnified the risk of Finnegan illegally entering defendant's vehicle by leaving the door open after Finnegan had already done so once.  And most tellingly, Officer Daughtery repeatedly allowed Finnegan to enter the car even though he was controlling the dog with a leash.  Under these circumstances, defendant respectfully submits that the Court's conclusion that "Finnegan's conduct in jumping into the Jaguar was instinctive and was not facilitated by the police officers" is unsupportable.  Mem. Op. at 16.

Finally, the Court stated at the hearing that defendant's argument with respect to Finnegan's entry into defendant's vehicle reflected a misunderstanding of the basis of the suppression doctrine. Respectfully, the purpose of the suppression doctrine--to deter law enforcement conduct that violates citizens' constitutional rights--would be fully served by suppression of the physical evidence in this case. As discussed above, law enforcement is not permitted to make entry into a citizen's vehicle in the absence of some exception to the warrant requirement, most usually probable cause to believe a crime has been committed. When applied to K-9 searches, this constitutional doctrine means that the dog's search is limited to *the exterior* of a citizen's automobile. See, e.g., Caballes, 543 U.S. at 409. When law enforcement permits a K-9 to search *inside* a citizen's car in the absence of some exception to the warrant requirement--as the Park Police Officers plainly did here--it has violated a defendant's rights under the Fourth Amendment in a manner that *can only* be remedied through suppression of any physical evidence recovered. Accordingly, the issues presented by Finnegan's repeated entries into defendant's vehicle are perfectly tailored to the suppression doctrine.

Here, it is undisputed that the officers repeatedly allowed Finnegan into defendant's vehicle. It is also clear that the officers allowed Finnegan to conduct his searches of the interior of defendant's vehicle in the absence of probable cause or any other exception to the warrant requirement. Given these circumstances, the physical evidence in this case must be suppressed.

## **CONCLUSION**

Based on the foregoing proposed findings of fact and conclusions of law, defendant respectfully requests that this Court reconsider its March 19, 2007 ruling and Memorandum Opinion and suppress the contraband and money allegedly seized from defendant's vehicle and his person on January 3, 2006.

    Respectfully submitted,

    A.J. Kramer
    Federal Public Defender

    _____/s/_____
    Jonathan S. Jeffress
    Assistant Federal Public Defender
    625 Indiana Ave., N.W., Suite 550
    Washington, D.C. 20004
    (202) 208-7500, ex. 134

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 06-032 (HHK) |
| ) | |
| GEORGE MCKOY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Upon consideration of defendant's Motion for Reconsideration of Court's Ruling On Defendant's Motion to Suppress, any Opposition thereto, and for good cause shown, it is hereby

**ORDERED** that the motion is **GRANTED**; and it is

**FURTHER ORDERED** that the crack cocaine and $941 seized in this case on January 3, 2006 is suppressed.

**SO ORDERED**.

_____
JUDGE HENRY H. KENNEDY
UNITED STATES DISTRICT JUDGE

_____
DATE

Jonathan S. Jeffress, AFPD
Donnell Turner, AUSA